David and Sandra Roeberg v. Commissioner.
Roeberg v. Commissioner
Docket Nos. 3068-67 and 3574-68.
United States Tax Court
T.C. Memo 1970-236; 1970 Tax Ct. Memo LEXIS 123; 29 T.C.M. (CCH) 1007; T.C.M. (RIA) 70236; August 20, 1970, Filed. Stephen B. Potter, 10 E. 13th, Wilmington, Del., for the petitioners. Bert W. Hunt, for the respondent. IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: Respondent determined deficiencies in petitioners' income tax for the following years: TaxableYear
Docket No.
Deficiency
1963
3068-67
$106.67
1964
3574-68
179.90
1965
3574-68
267.37 The only question presented is whether certain expenses associated with petitionerhusband's law school studies and taken as business expenses on petitioners' income tax returns for the years enumerated above are deductible under section 162 of the Code. Findings of Fact Some of the facts have been stipulated by the parties. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. *124 David Roeberg (hereinafter David or petitioner) and Sandra Roeberg (hereinafter Sandra) are husband and wife and were residents of Wilmington, Del., at the time the petitions herein were filed. David and Sandra filed joint Federal income tax returns for the years 1963 through 1965 with the district director of internal revenue, Wilmington, Del. Sandra is a party to the case only by virtue of having filed joint returns with David 1008 for the years in question. Accordingly, reference to the "petitioner" will at all times hereinafter be restricted to David. During the three years in issue, petitioner was a certified public accountant, having started his own practice in September 1960. Petitioner received his accounting training from New York University's School of Commerce, from which institution he graduated in June 1958. While at N.Y.U., petitioner received honor grades in the following law oriented courses: Course Hours
Grade
Contracts and agencies
2
A
Results of agencies
2
A
Commercial papers and securities
2
B
Operation of partnership
2
A
Transactions with banks
2
A
Insurance, guaranty and surety
2
A
Subsequent to his graduation *125 from college, petitioner joined the Wilmington, Del., accounting firm of Kreiger, Greenwald and Zenker, with whom he was associated until opening his own firm in September 1960. Except for time spent on active military duty, during September 1961 through August 1962, petitioner has been continuously active in the parctice of accounting. In 1968, his firm became known as Roeberg, jablow and Company. In 1963 petitioner decided to enter law school. Accordingly, petitioner submitted an application to the Temple University School of Law, requesting that he be admitted to the night division of that institution. One of the questions on the application form read as follows: "In what State do you intend to practice law?" In response to this question, petitioner answered "Delaware." Petitioner also submitted to the law school a request for financial aid. Questions 19(a) through 19(c) on the request form supplied by the law school were answered by petitioner in the following manner: (a) Is law your own or your parents' choice of a profession for you? It is my choice. (b) Do you intend to practice law? Yes. Where? Delaware. (c) If not, for what purpose do you desire a legal education? *126 (left blank by petitioner). Petitioner's application to Temple was approved, and he began his law studies in September 1963. Between the fall of 1963 and the spring of 1965, petitioner completed the following courses which were required by the law school: Course
Hours
Grade
Fall 1963-64
Contracts I
2
B -
Introduction to Law and
2 Legal Bibliography
1
A -
Property I
2
B
Spring 1964
Contracts II
4
B -
Property I
2
B
Fall 1964-65
Torts
4
B
Spring 1965
Equity
2
B
Torts
2
A
Comprehensive Examination
2
C+
Of the amounts expended by petitioner on his law school studies during the time periods encompassed by the above schedule, the following expenditures, which were treated as deductible business expenses on petitioner's income tax returns for the years 1963-1965, form the basis for the dispute herein: 1963
Tuition
$318.00
Books
94.57
Transportation 112.50
Total
$525.07
1964
Tuition
$437.00
Books
22.60
Transportation 200.00
Total
$659.60
1965
Tuition
$182.00
Spring
Books
39.90
Semester
Transportation 75.00
Total
$296.90
Beginning with the fall 1965 semester, petitioner *127 intensified his profram of study. By increasing his academic workload, petitioner was able to amass the number of credit hours needed for graduation by the end of the spring 1968 academic term. Accordingly, petitioner received a J.D. degree from Temple in June 1968. On December 16, 1968, petitioner was admitted to practice law in the State of Delaware. At the time of the trial of this case, he was a partner in the Wilmington, Del., law firm of Sullivan, Potter and Roeberg. His association with Roeberg, Jablow and Company also remained active. Opinion During the years in issue, petitioner was a certified public accountant and a parttime law student at Temple University. The only issue presented is whether certain educational expenses incurred by petitioner during his first four semesters of law school 1009 were, within the meaning of section 162 [1] and respondent's regulations promulgated thereunder, ordinary and necessary to petitioner's practice of accounting. N. Kent Baker, 51 T.C. 243 (1968); Burke W. Bradley, Jr., 54 T.C. 216 (1970). The question is one of fact, Cosimo A. Carlucci, 37 T.C. 695, 700 (1962), and the burden of establishing *128 deductibility is on petitioner.
To qualify the disputed expenditures for section 162 treatment, petitioner must show that they were (a) "proximately and directly" related to petitioner's trade or business, James A. Carroll, 51 T.C. 213, 218 (1968), and (b) incurred primarily for the purpose of maintaining or improving his skills as a certified public accountant, sections 1.162-5(a)(1) and 1.162-5(b), Income Tax Regs.[2]
*129 In the instant case, petitioner has admitted that his law school expenditures incurred subsequent to the spring of 1965 are not deductible. Accordingly, the only expenditures befor us are those associated with the law school courses which we have set out in our findings of fact. As to these expenditures, it is incumbent upon petitioner to establish a causal connection between the courses taken and the skills sought to be improved. See concurring opinion of Tannenwald, J., in James A. Carroll, supra; and Robert Lee Henry, 36 T.C. 879, 884 (1961). With the exception of the courses in property and contracts, it is our opinion that petitioner has failed to establish such a nexus. [3]
*130 As to the courses in contracts and property, even if we were to assume arguendo that a proximate and direct relationship did exist between these courses and petitioner's activities as an accountant, a deduction would still not obtain under respondent's pre-1967 regulations unless petitioner also established that his primary motivation for entering law school and taking these courses was to improve or maintain his skills as a certified public accountant. This, we do not think, he has established. Where, as here, the program pursued provided an individual with the educational requirements needed to enter a profession, which he subsequently did enter, there exists, in our estimation, a strong inference that such program was undertaken with a view toward one day becoming a member of that profession. In the instant case we do not feel that petitioner has adequately dispelled this inference. Not only did petitioner ultimately enter the practice of law, but he also indicated this to be his longrange professional objective on the law school scholarship form which he submitted to Temple University in 1963. In addition, petitioner did not attempt to show that other members of the Wilmington *131 accounting community regarded law school study as a customary way of maintaining or improving their standing as certified public accountants. By contrast, see Cosimo A. Carlucci, supra, at p. 701. 1010 These facts coupled with the fact that petitioner already had a rather extensive - albeit non-Socratic - undergraduate exposure to law courses which were of value to him in the practice of accounting, suggest to us that petitioner's primary purpose for entering law school was to one day enter the legal profession. Under section 1.162-5 (b) of respondent's pre-1967 regulations, all expenses associated with such a personal objective must be denied. Decisions will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business * * * * * * Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. * * * (b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advaxcement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. * * * Though petitioner could have relied on respondent's regulations as they are now constituted as well as the predecessor to these regulations which we have set out above, see Rev. Rul. 68-191, 1968-1 C.B. 67, and Ronald F. Weiszmann, 52 T.C. 1106↩ (1969), petitioner did not cite us to the more recent regulations, and we do not, therefore, regard them as being pertinent to the discussion herein.
3. In so holding, we deem it wise to note that in a proper case, such as where an entire law school curriculum is judged to be in keeping with the needs of a particular kind of accounting practice and where such program is undertaken primarily to maintain or improve skills already possessed, esoteric law school courses such as equity and torts could possibly be regarded as being germane to the practice of accounting. See, .g., Walter T. Charlton, T.C. Memo. 1964-59; and Frank Kilgannon, T.C. Memo. 1965-118↩.